UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____
                                                            )
UNITED STATES OF AMERICA            )
and the MICHIGAN DEPARTMENT      )
OF ENVIRONMENT, GREAT LAKES,   )
AND ENERGY                                         )
                                                            )
      Plaintiffs,                                  )
                                                            )
          v.                                         )    Civil Action No. 23-cv-_____
R.J. TORCHING, INC., aka RJ Industrial  )
LLC or RJ Industrial,                              )
                                                            )
      Defendant.                                )
_____)

# EXHIBIT A TO COMPLAINT:

# 2015 ADMINISTRATIVE CONSENT ORDER

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
REGION 5

| | |
|---|---|
| In the Matter of: ) | EPA-5-15-113(a)-MI-02 |
| ) | |
| RJ INDUSTRIAL ) | Proceeding Under Sections 113(a)(1) and |
| Battle Creek and Flint, Michigan ) | 114(a)(1) of the Clean Air Act, 42 U.S.C. |
| ) | §§ 7413(a)(1) and 7414(a)(1) |

### Administrative Consent Order

1.  The Director of the Air and Radiation Division, U.S. Environmental Protection Agency (EPA), Region 5, is issuing this Order to RJ INDUSTRIAL (RJ) under Sections 113(a)(1) and 114(a)(1) of the Clean Air Act (CAA), 42 U.S.C. §§ 7413(a)(1) and 7414(a)(1).

### Statutory and Regulatory Background

2.  Each state must submit to the Administrator of EPA a plan for attaining and maintaining the National Ambient Air Quality Standards under Section 110 of the CAA, 42 U.S.C. § 7410.

3.  On June 11, 1992, EPA approved R336.1301 as part of the federally enforceable Michigan State Implementation Plan (SIP). 57 *Fed. Reg* 24752 (June 11, 1992). On June 1, 2006, EPA approved a revision to R336.1301. 71 *Fed. Reg.* 31093 (June 1, 2006). R336.1301 first became federally effective on July 13, 1992, and the SIP revision became federally effective on July 3, 2006.

4.  R336.1301(1)(a) requires, in part, that a person shall not cause or permit to be discharged into the outer air from a process or process equipment visible emissions (VE) of a density greater than a 6-minute average of 20 percent opacity, except for one 6-minute average per hour of not more than 27 percent opacity.

5. On June 11, 1992, EPA approved definitions in R336.1101 and R336.1116 as part of the federally enforceable Michigan SIP. 57 *Fed. Reg.* 24752 (June 11, 1992).

6. R336.1116 defines "person," in part, as an individual, a company, or a corporation.

7. R336.1116 defines "process" as an action, operation, or a series of actions or operations at a source that emits or has the potential to emit an air contaminant.

8. R336.1116 defines "process equipment" as all equipment, devices, and auxiliary components, including air pollution control equipment, stacks, and other emission points, used in a process.

9. R336.1101 defines "air contaminant" as a dust, fume, gas, mist, odor, smoke, vapor, or any combination thereof.

10. Under Section 113(a)(1) of the CAA, 42 U.S.C. § 7413 (a)(1), the Administrator of EPA may issue an order requiring compliance to any person who has violated or is violating a SIP. The Administrator has delegated this authority to the Director of the Air and Radiation Division.

11. The Administrator of EPA may require any person who owns or operates an emission source to make reports; sample emissions; and provide information required by the Administrator under Section 114(a)(1) of the CAA, 42 U.S.C. § 7414(a)(1). The Administrator has delegated this authority to the Director of the Air and Radiation Division.

### Findings

12. RJ owns and operates scrap collection and processing facilities at 989 North Raymond Avenue, Battle Creek, Michigan (the Battle Creek facility) and G-5167 North Dort Highway, Flint, Michigan (the Flint facility), where it conducts torch cutting of metal scrap.

13. RJ is a "person," as that term is defined at R336.1116.

2

14. Torch cutting is a "process," as that term is defined at R336.1116.

15. Emissions from torch cutting at the Battle Creek and Flint facilities are "air contaminants," as that term is defined at R336.1101, and are subject to R336.1301.

16. On August 12 and November 19, 2010, the Michigan Department of Environmental Quality conducted VE readings in accordance with EPA Method 9 of RJ's torch-cutting operations at the Flint facility.

17. On June 4 and 5, 2013, EPA conducted VE readings in accordance with EPA Method 9 of RJ's torch-cutting operations at the Battle Creek facility.

18. RJ owns or operates an "emission source" within the meaning of Section 114(a)(1) of the CAA, 42 U.S.C. § 7414(a)(1). Therefore, RJ is subject to the requirements of Section 114(a)(1).

19. On March 25, 2011, and December 20, 2013, EPA issued to RJ Notices of Violation (NOVs) for alleged exceedances of the VE opacity limit of R336.1301(1)(a) of the Michigan SIP from the torch-cutting operations at its Flint and Battle Creek facilities, respectively.

20. On April 25, 2011, representatives of RJ and EPA discussed the March 25, 2011, NOV and on January 9 and March 19, 2014, discussed the December 20, 2013, NOV. The parties have also had numerous conversations on various other dates with regard to operations at the facilities.

### Compliance Program

21. By the effective date of this Order, RJ must achieve, demonstrate, and maintain compliance with the Michigan SIP at its Battle Creek and Flint facilities.

3

22. By the effective date of this Order, RJ shall comply with the best management practices for torch-cutting operations, as described in Appendix A, at its Battle Creek and Flint facilities.

23. By no later than 30 days after the effective date of this Order, RJ shall develop a training program and shall require all of its employees who conduct torch cutting, in addition to the appropriate supervisors and managers, to complete training on all aspects of the best management practices for torch-cutting operations, as described in Appendix A, including proper and safe operation of torch-cutting equipment and the RJ Industrial Manufacturing's Smoke Particulate Air Reduction Cyclone System (SPARCS) units. RJ shall also require that these employees complete refresher training no less frequently than annually. RJ shall document completion of this training for each subject employee by date and signature.

24. During the term of this Order, RJ must at all times ensure that at least one employee at each of its facilities is certified under EPA Method 9 such that these employees can read the opacity of fugitive emissions during torch-cutting operations at the facilities.

25. Under Section 114(a)(1) of the CAA, 42 U.S.C. § 7414(a)(1), after the effective date of this Order, by no later than 45 days after January 31st and June 30th, until termination of this Order, RJ shall submit via first-class mail, overnight delivery, or email a semiannual report for the preceding 6-month period that shall include a discussion of RJ's progress in satisfying the best management practices for torch-cutting operations, as described in Appendix A, at its Battle Creek and Flint facilities. These reports shall include, at a minimum:

    a. A narrative description of activities RJ undertook to minimize torch-cutting operations at each facility;

    b. Current site maps for each facility that include traffic patterns, material storage areas, torch-cutting areas (along with alternative torch-cutting areas to be

4

used when wind conditions result in excessive VE), torch-cutting equipment areas, and locations of SPARCS units;

c. Actions RJ undertook to limit or eliminate traffic in and around the torch-cutting areas at each facility to minimize emissions of fugitive dust;

d. A description of any evaluation of the feasibility of erecting portable or temporary structures at the facilities that are designed to help prevent fugitive emissions from escaping the properties;

e. A description of any preventative maintenance performed on torch-cutting equipment, including the SPARCS units; and

f. A description of each occurrence when opacity exceeded the limit in R336.1301(1)(a) of the Michigan SIP during torch-cutting operations, including an explanation of the likely cause of the exceedance and the remedial steps taken to prevent or minimize further exceedances.

26. RJ shall include the following certification for each report:

I certify under penalty of law that I have examined and am familiar with the information in the enclosed documents, including all attachments. Based on my inquiry of those individuals with primary responsibility for obtaining the information, I certify that the statements and information are, to the best of my knowledge and belief, true and complete. I am aware that there are significant penalties for knowingly submitting false statements and information, including the possibility of fines or imprisonment pursuant to Section 113(c)(2) of the Clean Air Act and 18 U.S.C. §§ 1001 and 1341.

27. RJ must send all reports required by this Order to:

>    Attention: Compliance Tracker (AE-17J)
>    Air Enforcement and Compliance Assurance Branch
>    U.S. Environmental Protection Agency, Region 5
>    77 West Jackson Boulevard
>    Chicago, Illinois 60604

## General Provisions

28. This Order does not affect RJ's responsibility to comply with other federal, state, and local laws.

29. This Order does not restrict EPA's authority to enforce the Michigan SIP or the CAA.

5

30. Nothing in this Order limits the EPA's authority to seek appropriate relief, including penalties, under Section 113 of the CAA, 42 U.S.C. § 7413, for RJ's violation of the Michigan SIP.

31. Failure to comply with this Order may subject RJ to penalties of up to $37,500 per day for each violation under Section 113 of the CAA, 42 U.S.C. § 7413, and 40 C.F.R. Part 19.

32. The terms of this Order are binding on RJ, its assignees, and successors. RJ must give notice of this Order to any successors in interest prior to transferring ownership and must simultaneously verify to EPA, at the above address, that it has given the notice.

33. RJ may assert a claim of business confidentiality under 40 C.F.R. Part 2, Subpart B, for any portion of the information it submits to EPA. Information subject to a business confidentiality claim is available to the public only to the extent allowed by 40 C.F.R. Part 2, Subpart B. If RJ fails to assert a business confidentiality claim, EPA may make all submitted information available, without further notice, to any member of the public who requests it. Emission data provided under Section 114 of the CAA, 42 U.S.C. § 7414, is not entitled to confidential treatment under 40 C.F.R. Part 2, Subpart B. "Emission data" is defined at 40 C.F.R. § 2.301.

34. This Order is not subject to the Paperwork Reduction Act, 44 U.S.C. § 3501 *et seq.*, because it seeks collection of information by an agency from specific individuals or entities as part of an administrative action or investigation. To aid in our electronic recordkeeping efforts, please furnish an electronic copy on physical media such as compact disk, flash drive or other similar item. If it is not possible to submit the information electronically, submit the response to this Order without staples; paper clips and binder clips, however, are acceptable.

35. EPA may use any information submitted under this Order in an administrative, civil judicial, or criminal action.

36. RJ agrees to the terms of this Order.

37. This Order is effective on the date of signature by the Director of the Air and Radiation Division. This Order will terminate two years from the effective date, provided that RJ has complied with all terms of the Order throughout its duration.

3/24/15
Date

Jason Roughton
President
RJ INDUSTRIAL

3/31/15
Date

George T. Czerniak
Director
Air and Radiation Division
U.S. Environmental Protection Agency, Region 5

7

# Appendix A

## Best Management Practices to Reduce Visible Emissions and Fugitive Dust at RJ's Battle Creek and Flint Facilities

1. RJ shall continuously analyze all of its scrap-processing activities and shall determine ways to minimize torch cutting at its facilities whenever possible (e.g., by shearing, cutting, breaking, etc. the scrap to be processed).

2. RJ shall develop site maps that identify what activities are conducted across its facilities, including traffic patterns, material storage areas, torch-cutting areas (along with alternative torch-cutting areas to be used when wind conditions result in excessive Visible Emissions (VEs)), torch-cutting equipment areas, and locations of SPARCS units. RJ shall post the relevant site map at several locations across each facility.

3. RJ shall continuously analyze traffic patterns at its facilities and shall determine ways to limit or eliminate traffic in and around the torch-cutting areas to minimize emissions of fugitive dust.

4. RJ shall conduct daily wind pattern analyses through onsite wind socks, wind charts, and/or weather reports and shall adjust torch-cutting operations as necessary to prevent VEs.

5. RJ shall use only crushed concrete, aggregate, crushed limestone, slag, or gravel in high-traffic areas at its facilities as ground cover and shall replace the material as necessary to help control emissions of fugitive dust. RJ may also apply calcium chloride to these areas to control fugitive dust.

6. RJ shall use water turbines, water trucks, and/or sprinklers in and around torch-cutting areas when appropriate to help minimize emissions of fugitive dust.

7. RJ shall periodically evaluate the feasibility of erecting portable or temporary structures at its facilities that are designed to help prevent fugitive emissions from escaping the properties.

8. RJ shall ensure that its employees are aware of what materials are likely to produce higher VEs when torch cut and shall develop protocols to manage VEs when cutting those materials.

9. RJ shall process scrap without torch cutting whenever possible (e.g., by shearing, cutting, breaking, etc.). RJ shall not torch cut lead, galvanized metals, or aluminum.

10. RJ shall utilize the SPARCS units, which are designed to reduce opacity from torch-cutting operations. SPARCS is an emission control technology, which, if properly maintained and utilized, should result in significant reduction of particulate emissions and opacity from

torch-cutting operations to comply with the Clean Air Act and R336.1301 of the Michigan SIP.

11. RJ shall conduct and document preventative maintenance of all torch-cutting equipment, including the SPARCS units, to maintain them in proper working order.

12. RJ shall inspect torch-cutting equipment before and after every use for damaged hoses and regulators, valves, or tips, along with any contamination with oil or grease. If any damage is observed, RJ shall not use the equipment until it is in proper working order.

13. RJ shall conduct good housekeeping practices in the torch-cutting areas to eliminate, to the extent practicable, foreign material that could create VEs if it is in contact with torch flames.

14. RJ shall have an employee who is not conducting torch-cutting at that time watch torch-cutting operations for any signs of fire. This observation shall be continued for at least 30 minutes after the scrap has been torch cut.

15. RJ shall ensure that there is readily-available access to water, fire extinguishers, or other fire-suppression methods from the torch-cutting areas to be used if there is a flare-up during or after torch-cutting operations. RJ shall regularly inspect all fire extinguishers and ensure that they are properly maintained.

16. RJ shall use proper torch-cutting methods to prevent VEs due to excessive flame length/strength and/or buildup of torch-cutting gasses, which shall include, at a minimum, purging hose lines individually before lighting the torch with the proper flint-type device to ensure that no oxy-fuel gas mixture is present in the hoses and using fuels only at proper operating pressures.

17. RJ shall ensure that scrap to be torch cut is drained of all fluids, has had all non-metal material removed, to the extent practicable, and has been properly and thoroughly cleaned prior to torch cutting. RJ shall dispose of flammable, combustible, or explosive fluids and materials in approved receptacles or disposal facilities in accordance with applicable local, state, and/or federal laws.

18. RJ shall perform torch cutting only when on surfaces of crushed concrete, aggregate, crushed limestone, slag, or gravel, unless there is no longer any space for cutting on such surfaces.

19. RJ shall conduct torch cutting in a SPARCS unit at any time when, due to the scrap's metallurgical properties and size, emissions are expected to exceed the VE limit in R336.1301(1)(a) of the Michigan SIP. Such decisions are to be made only by employees who have been trained in accordance with Paragraph 23 of this Order.

20. When a SPARCS unit is in use, RJ shall measure the opacity at the exhaust of the SPARCS unit. RJ shall suspend torch-cutting operations at any time when opacity readings exceed the VE limit in R336.1301(1)(a) of the Michigan SIP.

21. RJ shall remain subject to enforcement action by EPA, including the collection of civil penalties, if its torch cutting results in an exceedance of the VE limit in R36.1301(1)(a) of the Michigan SIP, regardless of whether RJ has complied with the terms and conditions of Paragraphs 19 and 20 of this Appendix.

22. RJ shall install horns at the torch-cutting areas at its facilities and shall use them to signal cessation of torch-cutting operations if excessive VEs are observed or if there is a change in wind patterns that could cause excessive VEs.