UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA and the MICHIGAN DEPARTMENT OF ENVIRONMENT, GREAT LAKES, AND ENERGY<br><br>Plaintiffs,<br><br>v.<br><br>R.J. TORCHING, INC., aka RJ Industrial LLC or RJ Industrial,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 20-cv-_____<br>)<br>)<br>)<br>)<br>)<br>) |

**EXHIBIT G:**

**EGLE NOTICE OF VIOLATION-5/25/2016**



STATE OF MICHIGAN
DEPARTMENT OF ENVIRONMENTAL QUALITY
LANSING DISTRICT OFFICE



RICK SNYDER
GOVERNOR

KEITH CREAGH
DIRECTOR

May 25, 2016

CERTIFIED MAIL – RETURN RECEIPT REQUESTED

Mr. Jason Roughton
RJ Industrial Recycling
5061 Energy Drive
Flint, MI 48505

Kotz Sangster Wysocki P.C
Mr. George F. Curran, III
400 Renaissance Center, Suite 3400
Detroit, MI 48243-1618

SRN: N7885, Genesee County

Dear Mr. Roughton and Mr. Curran:

## VIOLATION NOTICE

On May 24, 2016, the Department of Environmental Quality (DEQ), Air Quality Division (AQD) conducted visible emission (VE) readings of your facility located at G5167 North Dort Highway, Flint. The purpose of this inspection was to determine compliance with the requirements of the federal Clean Air Act; Part 55, Air Pollution Control, of the Natural Resources and Environmental Protection Act, 1994 PA 451, as amended (Act 451); and Administrative Consent Order EPA number 5-15-113(a)-MI-02.

As a result of the evaluation on May 24, 2016, the following air pollution violations were identified:

| Process Description | Rule/Permit Condition Violated | Comments |
|---|---|---|
| Torch cutting of scrap metal | Rule 301 | Smoke from torch cutting operations exceeded 20% opacity |
| Torch cutting of scrap metal | Administrative Consent Order EPA 5-15-113(a)-MI-02, paragraph 23 | Opacity exceedances show lack of or insufficient training of employees |
| Torch cutting of scrap metal | Administrative Consent Order EPA 5-15-113(a)-MI-02, Appendix A paragraph 8 | Operators torching materials giving high emissions |
| Torch cutting of scrap metal | Administrative Consent Order EPA 5-15-113(a)-MI-02, Appendix A paragraph 10 | SPARCS unit was not being used or was not operating, or was not effective |
| Torch cutting of scrap metal | Administrative Consent Order EPA 5-15-113(a)-MI-02, Appendix A paragraph 19 | SPARCS unit was not being used or was not operating, or was not effective |

During this inspection it was noted that your company's torch cutting processes were emitting opacity in excess of emissions allowed by Act 451, Rule 301.

Enclosed are copies of the instantaneous and six minute average readings taken on May 24, 2016, from 9:08 am to 9:53 am. It should be noted that this timeframe is not the only times in which opacity was witnessed on this date, but rather the times it was read and documented using Method 9 analysis.

In addition, opacity was observed on the dates of May 17, 18, and 19, 2016, by DEQ, AQD staff. Though Method 9 readings were not conducted during these days, it is the professional judgement of the AQD staff that the visible emissions observed were in excess of Rule 301.

The cited is enforceable per DEQ, AQD Rule 301 (R336.1301) and Administrative Consent Order EPA 5-15-113(a)-MI-02 paragraph 23, Appendix A paragraphs 8, 10, and 19 in the following manner:

Rule 301(1)(a) states: a person shall not cause or permit to be discharged into the outer air from a process or process equipment a visible emission of a density greater than the most stringent of the following: (a) A 6-minute average of 20% opacity, except for 1 6-minute average per hour of not more than 27% opacity. During the visible emissions readings, the maximum six minute opacity reading was 51.0%.

Paragraph 23 of the consent order requires "a training program and shall require all of its employees who conduct torch cutting, in addition to the appropriate supervisors and managers, to complete training on all aspects of the best management practices for torch cutting as described in Appendix A". Based on my observations, the individuals conducting torch cutting operations are not properly trained, or they are ignoring the training content and the site manager is not enforcing the standards.

Appendix A paragraph 8 states: "RJ shall ensure that its employees are aware of what materials are likely to produce higher VEs when torch cut and shall develop protocols to manage VEs when cutting those materials." Based on my observations, awareness of materials that produce higher VEs was either ignored or unknown to the torch operator.

Appendix A paragraph 10 states: "RJ shall utilize the SPARCS units, which are designed to reduce opacity from torch-cutting operations." Observations of the torch cutting operations were made without the use of the SPARCS equipment.

Appendix A paragraph 19 states: "RJ shall conduct torch cutting in a SPARCS unit at any time when, due to the scraps metallurgical properties and size, emissions are expected to exceed the VE limit in R336.1301(1)(a) of the Michigan SIP. Observations of torch cutting operations were made without the use of SPARCS.

Please initiate actions necessary to correct the cited violations and submit a written response to this Violation Notice by June 15, 2016. The written response should include: the dates the violations occurred; an explanation of the causes and duration of the violations; whether the violations are ongoing; a summary of the actions that have been taken and are proposed to be taken to correct the violations and the dates by which these actions will take place; and what steps are being taken to prevent a reoccurrence.

3

If RJ Industrial Recycling believes the above observations or statements are inaccurate or do not constitute violations of the applicable legal requirements cited, please provide appropriate factual information to explain your position.

Thank you for your attention to resolving the violations cited above. If you have any questions regarding the violations or the actions necessary to bring this facility into compliance, please contact me at the telephone number listed below.

Sincerely,

Nathan Hude
Environmental Quality Analyst
Air Quality Division
517-284-6779

NNH:TG

Enclosures

cc/via e-mail:  Ms. Sarah Marshall, EPA
Mr. Raymond Cullen, EPA
Ms. Lynn Fiedler, DEQ
Ms. Teresa Seidel, DEQ
Ms. Heidi Hollenbach, DEQ
Mr. Thomas Hess, DEQ
Mr. Brad Myott, DEQ